In re PFAFFINGER.

(District Court, W. D. Kentucky. June 6, 1907.)

BANKRUPTCY—DISCHARGE—FALSE STATEMENT MADE TO OBTAIN PROPERTY ON CREDIT.

A borrowing of money does not constitute the "obtaining of property on credit" within the meaning of Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended February 5, 1903 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1905, p. 684]), and the obtaining by a bankrupt of a loan from a bank by means of a materially false statement in writing made for the purpose is not ground for denying him a discharge.

In Bankruptcy.

J. A. Conkling, for bankrupt.
Wm. M. Smith, for creditor.

EVANS, District Judge. The Louisville National Banking Company, a creditor, has moved the court to annul and set aside the order entered herein on May 4, 1907, granting a discharge to the bankrupt upon the ground that it was prevented by inevitable accident from opposing the discharge when the hearing was had upon the bankrupt's petition therefor. In support of this motion the creditor has filed the affidavits of John R. Duffin and Wm. M. Smith, the latter affiant being the creditor's attorney. In further support of the motion the creditor has tendered a specification of its ground of opposition to the discharge. We may assume that the affidavits sufficiently establish a state of fact which might warrant the court in setting aside the order if the objection to the discharge alleged by the creditor be sufficient, under the statute, to defeat it. If the ground stated, assuming it to be true, is not in law sufficient, the discharge, which was granted in due and regular time and order, should not be disturbed.

The creditor filed sundry proofs of debt against the bankrupt's estate, each of which proofs was based upon a promissory note of recent date. The ground upon which the discharge is opposed is alleged to be that:

"The said Pfaffinger obtained money from this creditor upon a materially false statement in writing made to it for the purpose of obtaining such money. It says that on or about March 24, 1903, said Pfaffinger came to this creditor, the Louisville Banking Company, in Louisville, Ky., and made a request to open an account with it and to borrow money from time to time therefrom; that its said bank, through its president, told said Pfaffinger that he would have to first furnish a written statement of his assets and liabilities, showing fully his financial condition, before said bank could pass upon the question of loans, and it gave said Pfaffinger a blank statement, fully explaining same to him at the time; that he took it away with him and afterwards returned with it filled and signed by him, dated March 24, 1903."

The statement in writing referred to was addressed to the Louisville National Banking Company, and on its face says that it "is made for the purpose of borrowing money from" the bank. It shows the writer's indebtedness to be $10,200, and his assets to be at least $49,674.

Section 14 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended on February 5, 1903, 32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1905, p. 684], provides, among other things, that the court shall grant the discharge unless the applicant had "(3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit," and the question to be determined is whether borrowing "money" is "obtaining property on credit" within the meaning of that phrase in the statute. The question is not altogether free from doubt, because the word "property" is nomen generalissimum and of wide signification. In its broadest sense, of course, it would include money as well as everything else which can be the subject of ownership. What we are concerned to ascertain is precisely what Congress intended by the phrase "obtain-

154 F.—34

ing property on credit" as used in the act. The ground of opposition to a bankrupt's discharge which we are now considering was never introduced into our statute until February 5, 1903, and we have not found that the question now in contention has ever been satisfactorily adjudicated. The words under consideration are not technical, and should, we think, be given their easily understood meaning as commonly used in business circles and by the people generally. We should hardly expect one to use the words "obtaining property on credit" in speaking of an ordinary borrowing of money. One would rarely, if ever, be misunderstood if he spoke of obtaining property on credit. He would be regarded as referring not to obtaining a loan of money, but to getting possession of and the title to real estate or goods or chattels purchased by him without paying the price in cash.

A careful examination of the clause of the act and of each word in it will, we think, show that the real intention of Congress clearly was to deny discharges to bankrupts who had purchased specific property, and who, instead of paying cash therefor, had induced the seller to deliver it and to give credit for the price and defer the payment thereof by means of a materially false statement in writing made to secure those results. This seems to be the full extent of what was intended, as well as the meaning of the language used by Congress. We think the statute refers to purchases and sales of property on "credit," and not to loans of money. This seems to be the view also of Mr. Collier in his work on Bankruptcy (6th Ed.) pp. 196–199. Congress might, of course, and probably upon equally good reasons, have included the borrowing of money or other transactions in the legislation; but the question is what Congress did, and not what it might have done, and in endeavoring to ascertain the intention of Congress in what was actually enacted we must assume that it employed the language for the purpose of expressing what everybody would ordinarily understand it to mean according to popular usage.

The interpretation we give the statute appears to be abundantly supported by the second of the rules laid down by the Supreme Court in its opinon in United States v. Isham, 17 Wall., at page 504 (21 L. Ed. 728), where it was said:

"The words of a statute are to be taken in the sense in which they will be understood by that public in which they are to take effect. Science and skill are not required in their interpretation, except where scientific or technical terms are used."

And Mr. Endlich in his work on the Interpretation of Statutes says that:

"In general, statutes are presumed to use words in their popular sense; uti loquitur vulgus."

We therefore conclude that the phrase "obtaining property on credit" was not intended to include a borrowing of money on time. That is not the meaning the public would naturally attach to the phrase.

If this view be correct, the ground of objection stated by the creditor, even if true, would have been immaterial and wholly unavailable to prevent the discharge of the bankrupt, if it had been presented in due season. But lest our interpretation should not be the correct

one, the matter, pending the consideration of the question, was referred to the referee with instructions to ascertain and report whether the statement of the bankrupt in the writing referred to had been, when made, materially false, and thus enable the parties to get the whole matter into brief compass should a higher court be asked to review it. Accordingly he has reported that the statement in writing delivered to the bank was, when made, materially false in fact. This was probably unknown and unintended by the bankrupt, though those considerations would not control if the statute applied. But, as we have seen, the statute does not apply.

We are of opinion, for the reasons stated, that the motion to set aside the order granting the discharge should be overruled, and an order accordingly may be entered.