### In re TANNER et ux.

(District Court, E. D. Washington, E. D.   November 4, 1911.)

#### No. 873.

1. BANKRUPTCY (§ 409*)—GROUNDS FOR REFUSING DISCHARGE—FAILURE TO KEEP BOOKS.

To bar a bankrupt's discharge under Bankr. Act July 1, 1898, c. 541, § 14b(2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1310]), on the ground that he failed to keep books of account, such failure must have been "with intent to conceal his financial condition," and such intent is not shown as to a building contractor where, during the 10 years he had been in the business, he had never kept books.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 409.*]

2. BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSING DISCHARGE—OBTAINING "PROPERTY", ON FALSE STATEMENT.

The obtaining of a surety or indemnity bond by a bankrupt by means of a materially false statement was not the obtaining of "property" on credit within the meaning of Bankr. Act July 1, 1898, c. 541, § 14b(3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended in 1903 (Act Feb. 3, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1310]), which bars his right to a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*

For other definitions, see Words and Phrases, vol. 6, pp. 5693–5728; vol. 8, pp. 7768–7770.]

In the matter of Knacy L. Tanner and wife, bankrupts. On application for discharge.   Granted.

J. M. Simpson, for bankrupts.

J. B. Perkins, for objecting creditor.

RUDKIN, District Judge.   Subdivision "b" of section 14 of the bankruptcy act of 1898, as amended by the act of February 5, 1903, provides that the judge shall, after a hearing, grant the application of the bankrupt for his discharge, "unless he has   *   *   *   (2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained; or (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

The third paragraph or subdivision of subdivision "b" was further amended by Act June 25, 1910, c. 412, 36 Stat. 838, to read as follows:

"Or (3) obtained money or property on credit upon a materially false statement in writing, made by him to any person or representative for the purpose of obtaining credit from such person."

The act of 1910 was passed after the filing of the petition in bankruptcy, and is perhaps not applicable in this case, but, in any event, the change made in the act of 1903 by the act of 1910 is not material here, unless the insertion of the words "money or" before the word "property" in the act of 1903 be deemed a legislative construction of the term "property" in the previous act.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On the 20th day of February, 1911, the bankrupts filed their petition for a discharge, and on the 27th day of March following the H. J. Peterson Lumber Company, one of the creditors of the bankrupts, interposed objections thereto. Amended objections were filed on the 12th day of April, 1911. The matter was then referred to the referee as a special master to take testimony in support of the application for a discharge, and the objections thereto, and to report his findings and conclusions to the court, together with the testimony taken. The referee or special master has made his report, recommending the discharge, and the bankrupts have moved for a judgment on that report. The objecting creditor, on the other hand, has moved to set aside the conclusions of law made by the special master or referee, and for an order denying the discharge. While the objections to the discharge contain numerous specifications, those that are material are based on the above provisions of the bankruptcy act.

The findings of the referee are as follows:

"Specifications 1, 4, 5, and 7 combined are apparently intended to allege, and do allege, an objection to a bankrupt's discharge set forth in subdivision 2 of subsection 'b' of said section 14, as amended in 1903. I shall therefore consider specifications 1, 4, 5, and 7 together.

"Specifications 8, 9, and 10 combined are seemingly meant to allege the ground of objection to a bankrupt's discharge specified in subdivision 3 of subsection 'b' of said section 14 as amended in 1903. I shall consider specifications 8, 9, and 10 together.

"There is no evidence in support of specifications 2, 3, and 6.

"As to specifications 1, 4, 5, and 7: Knacy L. Tanner and Myrtle A. Tanner are husband and wife. The bankrupt, Knacy L. Tanner, has for the past 10 years been a building contractor in the city of Spokane, Wash. During all of said time he has never kept books of account, but he settled with his men at the end of each week, and had settled his lumber bills according to the bills rendered from the lumber yards. In the year just preceding the filing of his petition in bankruptcy he had buildings in the course of construction aggregating about $15,000 in value. Aside from the fact that he kept no books of account while engaged in a business in which such books are usually kept, there is no evidence tending to prove that he failed to keep books of account with intent to conceal his financial condition.

"As to subdivisions 8, 9, and 10: On June 17, 1909, Knacy L. Tanner made a written statement of his assets and liabilities to the Fidelity & Deposit Company, of Maryland, through its agents, McCrea & Merryweather, of Spokane, Wash., for the purpose of inducing said Fidelity & Deposit Company of Maryland to become surety for him on bonds covering contracts for the construction of buildings. Such statement was materially false in that it represented that Knacy L. Tanner had $925 in cash on June 17, 1909, whereas he had but $125 in cash; also, in that it did not include bills payable amounting to about $1,200. I find that Tanner must have known that the statement was false. The Fidelity & Deposit Company of Maryland, relying upon said false statement, became surety for Knacy L. Tanner on three bonds aggregating $5,000 and as surety paid the obligees of said bonds about $3,800 because of the default of the principal, Knacy L. Tanner."

As conclusions of law, the referee found that the first-mentioned specifications were not sustained, because it did not appear that the bankrupt failed to keep books of account with intent to conceal his true financial condition, and that the remaining specifications were not sustained because it did not appear that the bankrupt obtained property or credit upon a materially false statement in writing.

[1] The finding under the first specifications is manifestly insuffi-

cient to bar a discharge, for it is incumbent on the objecting creditor to show that the failure on the part of the bankrupt to keep books of account was "with the intent to conceal his true financial condition," and the special master has found that no such intent existed in this case.   Collier on Bankruptcy (8th Ed.) 280, 281, and cases cited.

[2] The second finding is no bar to a discharge, unless the obtaining of the surety or indemnity bond described in the findings is the obtaining of property on credit within the meaning of the statute.   I have been cited to no decision construing or defining the term "property" as here used, nor have I been able to find such on independent investigation.   The term "property" in its most comprehensive sense includes everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal, choses in action as well as in possession; in fact, everything which has an exchangeable value, or which goes to make up one's wealth or estate.   The term, however, is not always used in this comprehensive sense in constitutional and statutory provisions, and it is manifest that it was not so used here.   By the insertion of the words "money or" before the word "property" in the amendment of 1910, Congress manifestly doubted whether the term "property" as used in the amendment of 1903 was comprehensive enough to include money; and, if it did not include money, most assuredly it did not include a contract or obligation such as this.

In Firestone v. Harvey, 174 Fed. 574, 98 C. C. A. 420, Mr. Justice Lurton said:

"This ground for denying a discharge was evidently leveled particularly at the practice of making false statements of one's financial condition by a buyer or borrower for the purpose of obtaining from the person to whom such false statement is made, in writing, the articles or money desired 'on credit.'"

There must, therefore, be the obtaining of property by purchase or otherwise by means of the false statement and the relation of debtor and creditor must exist between the parties obtaining the property and the person from whom it is obtained, after the property is so obtained.   In my opinion, therefore, the indemnity bond in question is not property within the meaning of the statute, and, if it is, it was not obtained "on credit" because the relation of debtor and creditor did not exist after the bond was obtained any more than before.   The findings and conclusions of the special master are therefore approved, and an order of discharge will be entered accordingly.