## In re DUNFEE.

### (District Court, N. D. New York. August 4, 1913.)

BANKRUPTCY (§ 391*)—PROCEEDINGS IN STATE COURT—STAY—VACATION—DISCHARGE.

A bankrupt obtained from a surety company a bond to certain executors to enable him to withdraw money in their hands, conditioned to repay so much thereof as was necessary to pay valid claims against the fund. The surety, having been compelled to pay a large sum to the executors under the bond, instituted suit against the bankrupt in the state court, claiming false representations by the bankrupt as to his assets and liabilities, made to it to obtain the bond. Judgment was rendered in the state court against the bankrupt by default. He moved to vacate the same, and secured an order from the bankruptcy court staying the surety from entering judgment and further prosecuting the action in the state

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court, on the ground that the indebtedness to the surety was dischargeable in bankruptcy. The latter, however, claimed that it was a liability for obtaining property by false pretenses or false representations, or obtaining property on credit on a materially false statement in writing made to any person or his representative to obtain credit from such person, and was therefore a debt not chargeable in bankruptcy. *Held,* that a motion to vacate the order staying the surety from entering judgment and further prosecuting the action in the state court would be denied, to afford the bankrupt an opportunity to move the state court to vacate and open the default and try the merits of the issue whether the bond was obtained by false representations, with leave to renew the motion to vacate the stay on termination of such proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

In Bankruptcy. In the matter of Joseph Dunfee, bankrupt. On motion to vacate an order staying the plaintiff from entering judgment and further prosecuting an action in the Supreme Court of New York against the bankrupt. Denied, with leave to renew.

Hirsh & Newman, of Brooklyn, N. Y., for the motion.
Lyman, Canough & Higbee, of Syracuse, N. Y., opposed.

RAY, District Judge. December 19, 1912, the Empire State Surety Company commenced an action in the Supreme Court of the state of New York against Joseph Dunfee, the above-named bankrupt, to recover damages in the sum of $23,561.33 on the following alleged causes of action:

The plaintiff in such action, Empire State Surety Company, is a domestic corporation authorized to and engaged in writing indemnity bonds, and May 14, 1906, said John Dunfee made written application to said Empire State Surety Company for an indemnity bond in the sum of $27,000, to be given to the executors of the John Dunfee estate to protect them in paying over to said Joseph Dunfee the sum of $27,000, then standing to the credit of John Dunfee on a contract between Central New York Telephone & Telegraph Company and said John Dunfee for the construction of certain subways in the city of Syracuse, N. Y., and which contract the said Joseph Dunfee claimed to own together with the moneys due thereon. The conditions of the bond of indemnity entered into after the approval of the application were as follows:

"Whereas, heretofore, John Dunfee, now deceased, entered into a contract with the Central New York Telephone & Telegraph Company for the construction of certain subways in the streets of the city of Syracuse, N. Y., which said contract was accompanied by a bond executed by said John Dunfee to said telephone company to save said telephone company, under certain conditions, harmless from any damages which said company should suffer by reason of said work, or of any part thereof, or during the construction of the same; and whereas, said contract is claimed to be owned by said Joseph Dunfee, and he claims to be entitled to any moneys arising from the same after the payment of all obligations existing against said contract; and whereas, there remained on deposit to the credit of John Dunfee at the time of his death certain moneys derived from said contract, which said moneys, or a portion thereof, the said Joseph Dunfee desires should be paid to him:

"Now, therefore, the conditions of this obligation are such that if the executors of the last will and testament of John Dunfee, deceased, the obligees

in this bond named, shall advance to said Joseph Dunfee, from said moneys on deposit as aforesaid, the sum of twenty-seven thousand dollars, or any part thereof, that the said Joseph Dunfee shall pay any and all claims of every name and nature outstanding by reason of the construction of said work and any and all sums which exist or may be established as a liability against the estate of John Dunfee, deceased, by reason of said contract, or any liability by reason of the bond signed by said John Dunfee accompanying the said contract, or any liability that may hereafter be established against the estate of John Dunfee by reason thereof, or connected therewith, or arising therefrom, or against said Anna Dunfee and John J. Cummins, as executrix and executor, or individually, by reason of said advancement, and, further, that in the event of any determination that any of said moneys so advanced belongs to the estate of John Dunfee, and not to Joseph Dunfee, then that said Joseph Dunfee shall refund the same and save said obligees and executors, both as executors and individually, harmless by reason of such advancement, then this obligation to be void; otherwise, to remain in full force and effect. It being understood, however, that the advancement of said money shall in no wise be construed as a concession of the ownership of said fund in said Joseph Dunfee, or any waiver of any right or claim to same by said obligees, and in the event that upon the account of said executors it should be determined that said money belongs to the estate of John Dunfee, deceased, then said accounting and determination shall be conclusive as against the surety herein and fix the liability of the surety hereunder."

In his application for said bond of indemnity the said Joseph Dunfee represented and stated in writing in answer to the following questions:

"12. Give description and value of *your* personal property? (A) Stock and bonds amounting to $186,000.

"13. Have you any debts or liabilities, individual or otherwise? If so, give description and amount of same. (A) See statement attached."

The statement attached contained the following:

"4. The name of my firm is ———. (A) My partners are, none. * * *

"7. I own the following personal property, such as mortgages, stocks, bonds, etc. Various stocks and bonds amounting to $186,000. * * *

"13. The following is a statement of the firm's assets and liabilities at date of:

| | |
|---|---:|
| Stocks and bonds | $186,000 |
| Real estate | 27,300 |
| Fixtures and machinery | 6,000 |
| Mortgages | 3,500 |
| Book accounts good | |
| Bills receivable | 50,000 |
| Cash in bank | 8,000 |
| Other assets consisting of: | |
|    Due from John Dunfee estate | 33,000 |
| | $313,800 |

Liabilities.

| | |
|---|---:|
| Mortgages on real estate | $ 5,200 |
| Bills payable | 10,000 |
| Book accounts | 6,000 |
| Other liabilities, consisting of | none |
| | $21,200 |

\* \* \* \* \* \* \* \* \* \*

"The above statement is made for the purpose of inducing the Empire State Surety Company to give its obligation as above, and I hereby declare that I have therein stated the truth, without any mental reservation whatever.

                "[Signed]     Joseph Dunfee."

The allegation of the complaint is that:

"Upon information and belief, prior to the execution, sealing, and delivery of the bond (Exhibit C, the conditions of which are above stated) by plaintiff, and for the purpose and with the intent of inducing the plaintiff (the Empire Surety Company) to execute, seal, and deliver the same, this defendant falsely and fraudulently represented and stated to this plaintiff (the Surety Company) that at that time he had eight thousand dollars ($8,000.00) cash in bank, and that his only liabilities at that time amounted to twenty-one thousand two hundred dollars ($21,200.00), which he stated consisted of the following, and no others:

Mortgages on real estate .......................................$ 5,200 00
Bills payable .................................................. 10,000 00
Book accounts .................................................. 6,000 00
  *     *     *     *     *     *     *     *     *     *

"That each and every such statement and representation are and were false and untrue, and were known by the defendant to be false and untrue, at the time he made them; that they were made by the defendant with the intent and for the purpose of inducing the plaintiff to execute and deliver the said bond 'Exhibit C'; that the plaintiff believed said statements to be true, and relying thereon did execute, seal, and deliver the said bond, 'Exhibit C.'"

Also that Joseph Dunfee at that time did not have $8,000 in bank, but only $231, and that his liabilities were more than $21,200, and that over and above the liabilities stated he owed the Salt Springs Bank about $24,000. The complaint also alleges that after such bond was given suit was brought in the Supreme Court of the state of New York by the executors of John Dunfee on said bond against said Joseph Dunfee and the Empire State Surety Company—

"in which action it was alleged and proved that the said obligees (said executors) paid the sum of $20,810.88 by reason of a liability that existed against the estate of John Dunfee, deceased, by reason of the contract mentioned in said bond, and on the bond therein mentioned, of which action due notice was given this defendant."

That such sum, with interest and costs, the Empire State Surety Company, in all $23,561.33, in suit brought by said executors was compelled to pay by reason of having signed such surety bond. It is also alleged that on receipt of said bond of indemnity executed by Dunfee and the said Surety Company the said sum of $27,000 was paid over to said Joseph Dunfee by said executors. It therefore appears that in consideration of the giving of said bond by Joseph Dunfee to the executors of John Dunfee, deceased, with the said Empire State Surety Company as surety therein, the said Joseph Dunfee actually obtained the sum of $27,000, and that by reason of the facts stated, becoming surety on such bond, the Empire State Surety Company became liable to pay and did pay $23,561.33.

By section 17 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), "debts not affected by a discharge" include liabilities for "obtaining *property* by false pretenses or false representations," and by section 14b (3) of said act (as amended by Act Feb. 5, 1903, c. 487, § 4, 35 Stat. 797, and Act June 25, 1910, c. 412, § 6, 36 Stat. 839 [U. S. Comp. St. Supp. 1911, p. 1496]), it is provided that a discharge shall not be granted if the bankrupt has "obtained money or property on credit upon a materially false statement in writing, made by him to *any person*, or his representative,

for the purpose of obtaining *credit* from such person." Was the obtaining of the execution of this bond by the Surety Company in the first instance, and the obtaining of the $27,000 on the strength of same from the executors of the John Dunfee estate, or the corporation owing it to the estate represented by them, (1) the "obtaining money or property on credit upon a materially false statement in writing made by him (Joseph Dunfee) to any person (the Empire State Surety Company) or his (its) representative, for the purpose of obtaining credit from such person" (the Empire State Surety Company) within the meaning of the Bankruptcy Act? or (2) if not, is the "liability" of Joseph Dunfee to the Empire State Surety Company one for "obtaining *property* by false pretenses or false representations" within the meaning of said law?

By giving this indemnity bond Joseph Dunfee obtained $27,000 in money, not from the Surety Company to which the representations were made, but in fact from the executors of John Dunfee, deceased, and such executors gave him a certain credit, as the obligation of the bond was to repay to them such part of the $27,000 as the estate represented by them might be found obligated to pay to others. The Empire State Surety Company became surety for the payment of such sum, and to it (any person) the representations were made. Who is "such person" referred to, when the act says "for the purpose of obtaining *credit* from such person?" Is it the one from whom the credit is obtained, or the one from whom the money is obtained? Or is it the one to whom the representations were made? The Empire State Surety Company gave Joseph Dunfee a certain kind of credit, for it became surety for him; but no money or property was then obtained from it. The money was obtained from another.

If A. makes materially false statements to B. for the purpose of inducing B. to indorse his note to be given to C. for a loan of money to A., and on the faith of such representations B. does indorse the note, and A. obtains the loan giving the note so indorsed to C., and B. is compelled to pay the note, and sues A., is the liability of A. to B. dischargeable in bankruptcy, or is A. entitled to his discharge?

To bring the bankrupt within the provisions of section 14b (3), he must have (1) "obtained money or property on credit, (2) upon a materially false statement in writing, (3) made by him to *any person* or his representative, (4) for the purpose of obtaining *credit* (not money or property) from *such person*," obviously credit from any person to whom the representations were made.

If A., desirous of obtaining money or property from B., and being unable to do so himself on his own promise or credit, makes materially false statements in writing as to his financial condition to C. for the purpose of inducing C. to become his indorser or surety to B., so he (A.) can get the money or property desired, and on the faith of such representations C. does become surety or indorser for A., and then A. on such surety bond or indorsement given or made by C., as the case may be, and delivered to B., obtains the money from B., has not A. obtained money "on credit" upon a materially false statement in writing made by him to C. (any person) for the purpose of obtaining

*credit* from C. (such person), viz., the signing of such bond as surety, or of such note as indorser? Has not A. in such case obtained "credit" from C., the indorser or surety, as the case may be, and has not A. obtained money on credit?

The statute does not say the money or property must have been obtained from the one to whom the materially false statements were made. However, in Re Tanner (D. C.) 27 Am. Bankr. Rep. 615, 192 Fed. 572, Rudkin, District Judge, held:

"Under section 14b (3) of the Bankruptcy Act, as amended in 1903, the obtaining of an indemnity bond by a bankrupt does not constitute an obtaining of property on credit, so as to bar his discharge, when it appears that materially false statements as to his financial condition were made by the bankrupt for the purpose of obtaining the bond."

In that case no money was obtained in the first instance by the bankrupt on the bond, as it was given to secure the faithful performance of certain contracts; but the surety company had to pay the bond on its liability incurred by signing it, the bankrupt not having performed the contracts. When that case was decided, the amendments of 1910 had not been adopted.

In 2 Loveland on Bankruptcy (4th Ed.) p. 1321, § 730, it is said:

"To prevent a discharge under this provision [section 14b (3)], two things must be established by the objecting creditor: First, the bankrupt must have obtained *property on credit*; and second, he must have made to the person *from whom he obtained it* [property or credit, which] a materially false statement in writing for the purpose of obtaining *it* on credit."

Assuming that the pronoun "it" in each instance, as used in the quotation, refers to *property,* and the learned author would agree with Judge Rudkin, supra; but if the author means that, "second," he must have made to the person from whom he obtained "it," to wit, "credit," a materially false statement, etc., he does not.

In Gaddy v. Witt (Tex. Civ. App.) 27 Am. Bankr. Rep. 457, 142 S. W. 926, it was held:

"Where a debtor by false and fraudulent representations has procured an additional guarantor to a written guaranty for the payment of his existing or subsequently accruing indebtedness to a bank, and such guarantor pays the indebtedness, the debtor's liability for reimbursement, under section 17a (2) of the Bankruptcy Act, is not affected by his discharge in bankruptcy."

Prior to the amendment of 1910, and as amended February 5, 1903 (32 Stat. 797), section 14b (3) read:

"Obtained property on credit *from any person* upon a materially false statement in writing made to *such person* for the purpose of obtaining *such property* on credit."

It is obvious that many of the cases decided prior to the amendment of 1910 have no application now. It is clear that, as the section then (1903) read, the statement must have been made to the person from whom the property was obtained on credit.

Is a surety bond, when executed by a surety company, to be delivered to another for the purpose of enabling the principal in such bond to obtain money for himself from such other, which the principal and surety in such bond obligate themselves therein to repay in a certain

event or in certain events, "property" within the intent and meaning of sections 14 and 17 of the Bankruptcy Act? If not, then obtaining the bond is not obtaining money or property. If such a bond, when duly executed, is property, within the meaning of the act, then Dunfee obtained property by means of the false and fraudulent representations directly from the person to whom such representations were made. If the bond is not property, then as the money was obtained from the executors to whom the bond was delivered, the property obtained and intended to be obtained was obtained from persons to whom no representations were made, but on the credit of the Surety Company, which extended such credit to Dunfee, the principal in the bond, on the strength of his representations; that is, by means of the false and fraudulent representations made in writing to the Surety Company, Dunfee obtained credit with it and its bond, and on giving or delivering the bond and on the credit of the Surety Company he obtained the money. It was not a loan of money, and it was not an attempt to obtain the money of the surety company or the money of some other person. Dunfee claimed that the contract and money due thereon were his, and that he was entitled thereto; but, as there were or might be claims against it, as a condition of paying it over then, the executors required a bond with surety to refund any such sum as might be subsequently found to be a claim on such fund, or the money of the estate of John Dunfee, deceased, and not the property of Joseph Dunfee.

It is obvious that under section 17 (2) a debt for a liability for obtaining property by false pretenses or false representations (oral or written), and which must have been made to the party of whom the property was obtained, or to another and communicated to the person from whom the property was obtained, is not released by a discharge in bankruptcy. If a discharge is granted to the bankrupt, it has no effect on such a liability. If a bankrupt has obtained money or property *on credit* upon a materially false statement *in writing* made by him to *any person,* or his representative, for the purpose of obtaining *credit* from such person, he is not entitled to a discharge, and it has been held that the liability of the bankrupt on such a claim is in no way affected by the bankruptcy proceedings. Should the objection to his discharge not be raised, and a discharge be granted, still the liability might remain, and the discharge not bar the remedy for the tort. This seems to be so, even when the claim on the contract liability is proved and a dividend paid and accepted. Talcott v. Friend et al., 24 Am. Bankr. Rep. 708, 179 Fed. 676, 103 C. C. A. 80. I am of the opinion that obtaining the execution and delivery of a bond by a surety by means of false and fraudulent representations, verbal or in writing, made by the principal in such bond, and on which bond the principal procures money or property from a third person, which he claims to be his own, and some part or the whole of which he binds himself to repay in certain events, does not create a liability of such principal to the surety, in case the surety is compelled to pay the obligee in the bond for obtaining property by false pretenses or false representations. The false and fraudulent representations

had no influence in obtaining the property or money which was parted with on the credit of the surety, who in turn extended credit to such principal by reason of such false and fraudulent representations. Indirectly and later the principal gets the benefit of the money or property of the surety, which it pays to cancel its obligations to the obligee in the bond. But when we go back to section 14b (3), we have a different case. Here, applying the facts stated, the principal in the bond (now the bankrupt) has obtained money or property on credit—that is, on his promise to the obligee in the bond to pay at a future time and in a certain event—upon a materially false statement in writing made to the surety (a person) for the very purpose of obtaining, not money or property from such person (the surety), but for the purpose of *obtaining credit* from such person (the surety), and his signature, so as to obtain money, which he does obtain from the obligee in the bond.

I am of the opinion that, when A. induces B. to sign his bond or note *as surety*, he has obtained "credit" from such person. When he obtains that credit by false and fraudulent representations made in writing, and uses that credit to obtain money or property from another for himself on a promise to repay in a certain event, he has obtained such money or property on or by means of a materially false statement in writing made by him to the surety (any person) for the purpose of obtaining, not money or property from such person, the surety, which is not required by the statute, but for the purpose of obtaining *credit* from such person, the surety, which is all that section 14b (3) requires to defeat a discharge. Now, if the liability in such a case, reduced to judgment, will prevent a discharge, if shown on the application for a discharge, is it a liability for "obtaining property by false pretenses or false representations," within the meaning of section 17a (2)?

When Joseph Dunfee procured the Empire State Surety Company to sign his bond as surety, a liability (contingent) of said Dunfee to said Surety Company was created, in case the Surety Company was compelled to pay anything by reason of signing such bond, and when the Surety Company in the suit against it was compelled to pay and did pay the $23,561.33 which Dunfee should have paid, said Surety Company became an actual creditor of Dunfee, with a claim against him for that amount. In 2 Loveland on Bankruptcy, 1323, referring to section 14b, it is said:

"The amendment of 1910 amplified this section by inserting the words 'money or' before 'property,' and by providing that the statement must be made by the bankrupt to the creditor 'or his representative for the purpose of obtaining *credit* from such person.'"

This statement was made to the Surety Company, which company was induced thereby to sign, and did sign, the bond, and by reason of such signing the Surety Company became a creditor of said Joseph Dunfee, the bankrupt, and was induced to become such creditor by means of the false and fraudulent representations made by the debtor (the bankrupt) to the Surety Company.

It must be conceded that in this case Joseph Dunfee, the bankrupt,

actually obtained the money or property paid over to him, and to secure the repayment of which the bond was given, on the faith of the bond itself and the signature thereto of the Surety Company, and hence literally he did not obtain such money on credit "upon" the materially false statement in writing made to the Surety Company for the purpose of obtaining credit from the Surety Company. The materially false statements were never communicated to nor acted on by the executors of John Dunfee, deceased, who parted with the money. In fact, what Joseph Dunfee obtained by means of his false and fraudulent representations in writing made to the Surety Company was its signature to, execution of, and delivery of the bond; that is, the credit of the Surety Company in the first instance, and, because of Dunfee's default in complying with the condition of the bond, the Surety Company was compelled to pay Dunfee's debt, and hence Dunfee became liable to reimburse the Surety Company.

As the Surety Company in signing the bond relied upon the representations, and would not have signed but for them, the liability relied upon is that of having obtained the signature of the Surety Company to the bond, and indirectly and ultimately the money of such Surety Company for his (Dunfee's) benefit. Is it at all material that Dunfee did not obtain the money of the Surety Company directly and immediately, but only ultimately, and on the happening of the event or contingency provided for? Is such a liability within the contemplation of the Bankruptcy Act?

"A discharge in bankruptcy shall release a bankrupt from all his provable debts except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations," etc.

We always arrive at the result that Dunfee did not obtain any money or property "upon" the alleged materially false statements, but only indirectly by reason thereof, and that the *liability* of Dunfee to the Surety Company is not one for obtaining money or property from it directly by false pretenses or false representations, but is one for obtaining its signature to the bond by means of such representations and eventually the payment of the liability of the (now) bankrupt by the surety. When the liability of Dunfee to the Surety Company ripens into a judgment, if it should, it will be an adjudicated liability for having obtained the credit of the Surety Company for his use and benefit upon materially false statements in writing made to the surety for the purpose of obtaining that credit; or, enlarging the word "credit" to include the obligation of the Surety Company to pay money in a certain event or upon a certain contingency, then it will become an adjudicated liability for having obtained the written obligation of the Surety Company to pay money in a certain event for Dunfee's benefit, upon materially false statements in writing made to such surety for the express purpose of obtaining such written obligation. When the obligation of Dunfee to repay, or to pay back, a part of the money which he obtained from the executors of John Dunfee, deceased, by virtue of giving the bond with the Empire State Surety Company as surety thereon, became fixed (a contingency within the contemplation of all the parties), and Dunfee failed to pay as

206 F.—48

agreed, the Surety Company was compelled to pay and did pay because of its obligation as surety in writing, which obligation was obtained by Dunfee upon materially false statements in writing for his own use and benefit, and to enable him to obtain money which he claimed ,as his own, and which he did obtain, and which he agreed to repay in a certain event.

I think the question is to be determined by ascertaining whether or not so obtaining the signature or credit of a surety or surety company is the obtaining of *property* by false pretenses or false representations, or the obtaining of *money or property* on credit *upon* a materially false statement in writing. If obtaining the bond with the signature of the Surety Company thereto is not obtaining "property" within the meaning of the law, is it sufficient that through it the principal, Dunfee, eventually obtained indirectly, through the payment of his debt by the Surety Company, not the money or property, but the benefit of the money or property, of the Surety Company? He has certainly obtained *the benefit* of the money paid by the Surety Company, which was paid to make good money which he obtained on the bond and on credit, the credit of the Surety Company, and which credit was obtained upon a materially false statement made to such Surety Company for the purpose of obtaining credit from such Surety Company. But I doubt that it was intended by the amendments of 1910 to reach or cover the claims of persons who are induced by false pretenses or false representations to sign notes and bonds *as surety,* and who later are compelled to pay. May we interpolate so as to make section 17 read "liabilities for obtaining property or money, *or the payment of money or property for the bankrupt's benefit,* by false pretenses or false representations"? In section 14b (3) may be interpolate so as to make it read "obtained money or property on credit, or the benefit of the payment of money, upon a materially false statement in writing made by him to any person or his representative, for the purpose of obtaining credit, or made to the person compelled to make such payment of money"? However strong the desire of the court to bring a given case within the meaning of the statute as written, the courts are wisely forbidden to legislate. If Dunfee applies for a discharge, and obtains a discharge, he can plead same as a bar in case this action is stayed until the question of his discharge is determined, or if on his application for a discharge these matters are pleaded as a reason for refusing a discharge, all the facts can be shown to the court, and the matter decided on its merits, and the law applicable thereto.

The defendant Joseph Dunfee, the bankrupt here, claims that, if allowed to open the default in the Supreme Court, an inquest having been taken in the absence of his counsel and while another action was on trial, and before the case was reached for trial in its regular order, he can show that there was no materially false representation made to the Empire State Surety Company. The opening of such default and a trial of the case on the merits rests in the discretion of the Supreme Court. The action is brought for the fraud; that is, in tort. If the plaintiff is stayed from entering judgment, and to

enable the defendant to move to open the default and try the case on the merits, and he does so, and the motion is granted, and he succeeds on the trial, the whole question of refusing a discharge will be eliminated; but if Dunfee is not successful an adjudication of facts on a trial by jury will be presented, and all the court will have to do will be to determine whether such a judgment bars a discharge if pleaded by any one as a ground for refusing a discharge, or if that is not done, whether a liability on such a claim reduced to judgment is released by the discharge granted. I am of the opinion the ends of justice demand that Dunfee have an opportunity to move in the Supreme Court to vacate or open the default and try the case on the merits, and to that end the motion to vacate the stay is denied, with leave to the Empire State Surety Company to renew on the same papers used here and such additional papers as may be presented, and such renewed motion may be brought on for hearing at the December term of this court, to be held at Utica, N. Y., on the first Tuesday of that month. In the meantime Dunfee, if he so desires, can file his application for a discharge, and the Empire State Surety Company can, if it desires, present its objections to such application. This in effect postpones the final decision of this question to enable the bankrupt, Dunfee, to try the case on the merits, if the Supreme Court grants him leave so to do.

The injunction is so far modified as to permit the Empire State Surety Company to prosecute the action in the Supreme Court by trial, in case the default is opened, and entry of judgment in case it succeeds. If the application to open the default is denied, this court will take up this motion anew on the papers now before it, on a showing that such action has been taken by the Supreme Court.

So ordered.