In re OLINER et al.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 49.

1. BANKRUPTCY ⬥⟹407(5)—FALSE STATEMENT WHICH WILL PRECLUDE DIS-
CHARGE; "OBTAIN PROPERTY ON CREDIT."
    The obtaining by bankrupts of a license to do business as private bank-
ers, by means of a written statement made to the comptroller of the state
of New York, as required by statute, was not the obtaining of "property,"
within Bankruptcy Act, § 14b (3), Comp. St. § 9598, nor made to one from
whom property was obtained on credit, and, although the statement was
materially false it is not ground for denial of discharge.

2. BANKRUPTCY ⬥⟹407(5)—FALSE STATEMENTS BARRING DISCHARGE.
    The provision of Bankruptcy Act, § 14b (3), Comp. St. § 9598, authorizing
refusal of discharge to a bankrupt who has "obtained property on credit
from any person upon a materially false statement in writing made to such
person for the purpose of obtaining such property on credit," especially in
view of its legislative history, is not to be extended by construction.

3. BANKRUPTCY ⬥⟹407(3)—FRAUDULENT CONCEALMENT WHICH WILL BAR DIS-
CHARGE.
    The deposit by bankrupts of money in bank in their own name cannot
be considered a transfer or concealment to hinder, delay, or defraud credi-
tors, which will bar discharge under Bankruptcy Act, § 14b (4), Comp.
St. § 9598.

4. BANKRUPTCY ⬥⟹408(½)—OFFENSES WHICH BAR DISCHARGE LIMITED TO ACTS
MADE OFFENSES BY BANKRUPTCY ACT.
    Bankruptcy Act, § 14b (1), U. S. Comp. St. § 9598, which bars discharge
if bankrupt has "committed an offense punishable by imprisonment as
herein provided," is limited to acts made offenses by Bankruptcy Act.

Appeal from the District Court of the United States for the South-
ern District of New York.

In the matter of Saul Oliner and Isidor Oliner, trading as Oliner
Bros., bankrupts. On appeal from order refusing discharge. Re-
versed.

Robert P. Levis, of New York City, for appellants.
Samuel Hoffman, of New York City, for respondent.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This appeal brings before the court the
right of the bankrupts to their discharge. The court below, confirming
the report of the special master, has denied to the bankrupts individ-
ually and as copartners a discharge.

The bankrupts were engaged in the business of private banking in
the city of New York. It is alleged that they filed a false statement
with the comptroller of the state of New York, in order that that
official might permit them to continue in the private banking business
and to accept and receive deposits for safe-keeping as well as for trans-
mission.

It may be observed that obtaining property on credit on a materially
false statement in writing made to a person for the purpose of obtain-
ing credit from him was not made a ground for barring discharge in

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

any Bankruptcy Act of the United States until the present act was amended so to provide in 1903. Act Fed. 5, 1903, c. 487, 32 Stat. 797. The amendment then made was not only novel in the bankruptcy legislation of this country, but no such provision, it has been said, was to be found in the bankruptcy legislation of England.

The Bankruptcy Act, in making provision for the bankrupt's discharge, directs that the judge shall discharge the applicant after all the parties in interest have been fully heard and he has investigated the merits, unless the applicant has done certain enumerated things.

[1] It has been claimed that the bankrupts now before the court have done certain things which bar their discharge. Two objections to their discharge are made. The first specification of objection to be considered reads as follows:

"That heretofore, and on the 18th of December, 1913, the bankrupts herein made a statement in writing, which they submitted to the comptroller of the state of New York as of the 13th of December, 1913, in which statement they claimed that they had stocks and bonds of the value of $159,347.00, and that they had loans and bills receivable, not secured by collateral, amounting to $75,296.62. It is alleged that the said statement delivered by the bankrupts to the comptroller of the state of New York was delivered for the purpose of showing their true financial condition to the comptroller of the state of New York, in order that he might permit the said bankrupts to continue in the private banking business and to accept and receive deposits for safe-keeping as well as for transmission."

And the special master in his findings says:

"As to the false statement, the statement filed with the state comptroller enumerated certain equities in mortgages and various notes, aggregating upwards of $14,000, as good and collectible, and the officers of the receiver testify that, in liquidating the affairs of the bank, they have been able to collect only about $1,400 of those notes, and further this same witness testifies that the bankrupts' liabilities exceeded their assets over $100,000, and in the light of this testimony, in my opinion, the specification as to false statements has been sustained."

He adds:

"The amount of dividends payable to general creditors herein is so insignificant in amount that it seems impossible that the bankrupts could have made these financial statements to the state but a few weeks before bankruptcy, not knowing that they were inflated and much above the real value of the securities to which they referred. In my opinion, the specifications have been sustained, and the bankrupts should be denied their discharge."

Laws of the State of New York 1910, vol. 1, p. 614, c. 348, provide that no individual or partnership shall engage directly or indirectly in the business of receiving deposits of money for safe-keeping or for the purpose of transmission to another, or for any other purpose in cities of the first class, without having first obtained from the comptroller a license to engage in such business. In order to obtain such license, the applicant is obliged to file with the comptroller a written statement, which has to be verified, and which, among other things, shows the amount of the assets and liabilities of the applicant. If the applicant complies in all respects with the requirements of the law, and his statement is approved, the comptroller issues a license authorizing the licensee to carry on the business at the place described in the license

certificate, and upon the receipt of the certificate the licensee "shall cause such license certificate to be posted and at all times conspicuously displayed in the place of business for which it is issued, so that all persons visiting such place may readily see the same." Licenses so issued are revocable by the comptroller at all times for cause shown. Any person or partnership carrying on the specified business without a license is guilty of a misdemeanor.

And the Banking Law of New York makes it the duty of individual bankers to make a report to the state superintendent of banks, which report must be verified under oath to the effect that it is true and correct in all respects, to the best of the knowledge and belief of the persons verifying it. Birdseye, Cumming & Gilbert's Consolidated Laws, vol. 7, § 21. It also provides that a failure to make the report within a specified time, or to include therein the information required, should subject the delinquent to a forfeiture of $100 for every day that such report is delayed or withheld. And it goes on to say:

"If any * * * individual banker shall fail to make two successive reports, * * * such individual banker shall forfeit his privileges as such banker." Birdseye, Cumming & Gilbert's Consolidated Laws, vol. 1, p. 320, § 22.

Counsel for the opposing creditors refer to the above provisions, and ask whether the bankrupts did not, by reason of their license, obtain money and credit, and whether they did not hold and keep their license by regularly filing the quarterly reports which the Banking Act requires. The record fails to disclose what quarterly reports were filed with the superintendent of banking. The objection is confined to a certain specific report filed, not with the superintendent of banking, but with the state comptroller. But, however that may be, what is about to be said as to the statement filed with the state comptroller applies equally to a statement filed with the state superintendent of banking.

The Bankruptcy Act in section 14, subd. (b), Comp. St. § 9598, declares that the judge shall discharge the bankrupt unless he has " * * * (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." If the statement made to the superintendent of banks comes within the provision quoted, the discharge must be denied.

Is the statement filed with the state comptroller within the terms of section 14, subd. (b), cl. 3, above set forth? That provision was considered in Firestone v. Harvey, 174 Fed. 574, 98 C. C. A. 420. The Circuit Court of Appeals for the Sixth Circuit, speaking through Judge Lurton, after quoting the language of subdivision 3 of section 14b, said:

"This ground for denying a discharge was evidently leveled particularly at the practice of making false statements of one's financial condition by a buyer or borrower, *for the purpose of obtaining from the person to whom such false statement is made,* in writing, the articles or money desired 'on credit.' The false statement in writing which is enough to deny a discharge implies a statement knowingly false, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive, and thereby obtain from the person to whom it is made property upon credit."

It was held in In re Tanner (D. C.) 192 Fed. 572, that the obtaining of a surety or indemnity bond by a bankrupt by means of a materially false statement is not the obtaining of "property" on credit, within the meaning of the provision of the clause under consideration.

[2] The provision was also considered by this court in In re Zoffer, 211 Fed. 936, 128 C. C. A. 434. We held in that case, in an opinion written by Judge Lacombe, and concurred in by Judges Coxe and Ward, that a false statement in writing, made by the bankrupt to the agent of a commercial agency, merely that the agency might fix a credit rating in its books, and not requested by any customer, is not ground for denial of a discharge. The court in its opinion quoted from the report of the judiciary committee of the Senate concerning the measure in which it was said:

"Any tendency to make the bankrupt act unduly harsh is to be avoided. It is a sufficient ground of opposition to discharge that the bankrupt has obtained property from a creditor by a materially false statement in writing, where that statement was specifically asked for by the creditor or by the creditor's representative. General statements to mercantile agencies, not specifically asked for by prospective creditors, ought not to be ground of opposition to discharge; it makes the provision too harsh, in the estimation of your committee."

We are unable to distinguish this case in principle from In re Zoffer. Neither the state comptroller nor the superintendent of banks, like the mercantile agency, obtained the report at the request of any depositor or prospective depositor. Neither of those officials was the representative of a creditor from whom any money or property was obtained.

The obtaining of a license from the comptroller of the state of New York, or from the state superintendent of banking, is not the obtaining of "property" within the meaning of the clause under consideration. If it be said that moneys deposited with bankers thus licensed are obtained from depositors, on the faith of the statement filed either with the comptroller or the superintendent of banking, the answer is:

(1) That there is no evidence that a single depositor ever knew or heard of the statement, or relied upon it.

(2) That under the Bankruptcy Act the statement must be made to the person—in this case the depositors—from whom the credit was obtained.

[3] The specifications of objection also set forth:

"That the bankrupts, while insolvent and knowing that they were insolvent, accepted and received from numerous persons moneys for safe-keeping and transmission, which they well knew that they could not repay or return without intent to defraud persons who so gave to them moneys for safe-keeping, transmission, or for any other purpose."

And the special master in his findings says:

"As to the receiving of money for transmission to foreign countries, the testimony shows that these moneys had been intermingled with the general assets of the estate, and at the time of the filing of the involuntary petition there was some money on hand in the banks, and especially the Clinton Bank. There were some notes due the Clinton Bank from the bankrupts, and conse-

quently the Clinton Bank charged those notes against the balance, which nearly completely consumed the fund. This is no defense to the specification. The money was not available for the uses for which it was deposited with the bank, and in my opinion the specification has been sustained."

If the above specification of objection comes within any of the clauses in section 14b, it is within clause 4 which is as follows:

"(4) At any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed any of his property with the intent to hinder, delay, or defraud his creditors."

We may concede that the bankrupts received moneys for transmission to Europe, which were never transmitted. The bankrupts state that the sum so received was $5,167.50. Their explanation is that the breaking out of the war in Europe prevented the transmission. The master has found as a fact that these funds were not kept separate and apart from the other business assets. They were deposited in the Clinton Bank, and when the bankrupts failed that bank applied the funds on deposit to discharge the indebtedness due from the bankrupts to the bank. The deposit of these moneys in a bank in the name of the bankrupts certainly cannot be within clause 4 above cited, even though the funds went into their general account.

[4] Counsel for the opposing creditors in their brief call attention to the provision found in chapter 348 of the Laws of 1910 of the State of New York which reads as follows:

"29. O. * * * All moneys received for transmission to a foreign country by any licensee shall be forwarded to the person to whom the same is directed to be transmitted within five days after the receipt thereof, and every person who shall fail to so forward the same within the time specified, shall be guilty of a misdemeanor."

The inference seems to be that, because of the foregoing law of the state of New York, the defendants are subject to section 14, subd. (b), cl. 1, which prevents a discharge if the bankrupt "has (1) committed an offense punishable by imprisonment as herein provided." But surely it is quite unnecessary for us to say that, while the failure to transmit funds so received may be punishable as a misdemeanor under the laws of the state of New York, it is not made an offense punishable by imprisonment under any provision which can be found in the Bankruptcy Act. For that reason the failure to transmit is not within clause 1.

The order is reversed, with direction to grant the discharge.