## FIDELITY & DEPOSIT CO. OF MARYLAND v. ARENZ.

### No. 6865.

Circuit Court of Appeals, Ninth Circuit.

Nov. 7, 1932.

608

John Lichty and Robert Clapperton, both of Portland, Or., for appellant.

Lewis, Lewis & Finnigan, of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

WILBUR, Circuit Judge.

The Fidelity & Deposit Company of Maryland, engaged in the business, among other things, of furnishing surety bonds to contractors, objected to the discharge in bankruptcy of George C. Arenz, a contractor, for whom it had executed a surety bond for the sum of $71,306.25 on May 15, 1929, for the performance of a contract with the state of Oregon for the improvement of highways. This objection was based upon the ground that the bankrupt procured the execution of said surety bond by certain written false statements concerning his financial standing made by him to the appellant to induce, and which did induce, the execution thereof; and that the appellant was compelled to pay, and did pay, a judgment of $10,000 in an action brought upon said bond by the Oregon City Sand & Gravel Company. The bankrupt demurred to the sufficiency of the objections, thus admitting the truth of the allegations. The demurrer was sustained, and the discharge granted, from which order the surety company takes this appeal. The ques-

tion thus presented is whether or not under these circumstances the bankrupt "obtained money or property on credit, or obtained an extension or renewal of credit" within the meaning of the Bankruptcy Act regulating discharge. 11 USCA § 32 (b), (3), chapter 406, § 6, 44 Stat. 663. The appellee relies upon a decision of Judge Rudkin in Re Tanner, 192 F. 572, 574, decided November 4, 1911, in the District Court of the Western District of Washington. This decision was to the effect that the word "property" used in the above cited section before the amendment of 1910 was so restricted by the context that while the word "property" in its comprehensive sense included such a bond, as used in the Bankruptcy Act relating to "discharge" it did not. Judge Rudkin stated his conclusion as follows: "The term, however, is not always used in this comprehensive sense in constitutional and statutory provisions, and it is manifest that it was not so used here. By the insertion of the words 'money or' before the word 'property' in the amendment of 1910, Congress manifestly doubted whether the term 'property' as used in the amendment of 1903 was comprehensive enough to include money; and, if it did not include money, most assuredly it did not include a contract or obligation such as this."

The Supreme Court, in 1914, in Gleason v. Thaw, 236 U. S. 558, 35 S. Ct. 287, 288, 59 L. Ed. 717, had occasion to consider the meaning of the word "property" as used in the section of the Bankruptcy Act now under consideration. Speaking through Justice McReynolds the court said:

"The accurate delimitation of the concept 'property' would afford a theme especially apposite for amplificative philosophic disquisition; but the bankrupt law is a prosy thing intended for ready application to the everyday affairs of practical business, and when construing its terms we are constrained by their usual acceptation in that field of endeavor. The word 'property,' without restriction, occurs more than seventy times in the act. Not once does it plainly refer to professional services, and except in very few instances, to include them within its intendment would produce a patent absurdity. * * *

"Congress, we think, never intended that property in the paragraph under consideration should include professional services. At most it denotes something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought with-

in the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business, and the same significance attaches to it in many carefully prepared writings. The constitutions of many states provide that all property shall be taxed, but it has never been supposed that this applies to professional services."

This view of the Supreme Court tends to support the conclusion of Judge Rudkin that a surety bond is not property within the meaning of the section of the Bankruptcy Act under consideration. A substitution of the words "surety bond" for "professional services" in the foregoing quotation illustrates the aptness of the quotation to the case at bar.

Judge Neterer, sitting in the same court as Judge Rudkin, in September, 1926, in Re Ford (D. C.) 14 F.(2d) 848, followed the decision of Judge Rudkin above quoted as to the meaning of the word "property" as used in 11 USCA § 32 (b) (3), supra, of the Bankruptcy Act. He also decided that the obtaining of such a surety bond was not an obtaining of an extension or renewal of credit within the meaning of that section as amended in May, 1926 (44 Stat. 663, § 6).

The appellant claims that Judge Rudkin in Re Tanner, supra, overlooked the fact that the Supreme Court, as early as May, 1901, had held that the word "property" as used in the Bankruptcy Act relating to preferential transfers included "money." Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 S. Ct. 906, 45 L. Ed. 1171. The District Court for the Western District of Kentucky, in June, 1907, decided that the term "property" used in section 32 (b) (3) of the Bankruptcy Act, supra, did not include "money." In re Pfaffinger, 154 F. 528. However, this decision was reversed by the Circuit Court of Appeals of the Sixth Circuit January 16, 1908. In re Louisville Nat. Banking Co., 158 F. 403. Thus, before 1910 it had been held by the Circuit Courts of Appeals for the Sixth and Fourth (Samet v. Farmers' & Merchants' Nat. Bank, 247 F. 669) Circuits that the word "property" as used in section 32 (b) (3) included "money," but Congress evidently concluded to settle all doubt upon the matter by adding the word "money" to the word "property." If this legislative history is at all significant in the interpretation of the present law, it would at least seem to indicate that Congress was of opinion that the word "property" used in the amendment of 1903 (chapter 487, § 4 (b),

(3), 32 Stat. 797) was not used in its all-inclusive sense, just as Judge Rudkin held.

In view of the rule that the Bankruptcy Act concerning discharge is to be liberally construed in favor of the debtor [In re Jacobs (C. C. A.) 241 F. 620; Feder v. Goetz (C. C. A.) 264 F. 619; In re Reisler (C. C. A.) 278 F. 618; In re Braus (C. C. A.) 248 F. 55; In re Cooper (C. C. A.) 26 F.(2d) 585; In re Lee (D. C.) 51 F.(2d) 394], we concur in the conclusions reached by Judges Rudkin and Neterer in the cases above cited. It should be said, however, that the Court of Appeals of New York has held that where the fraudulent procurement of a surety bond is followed by the payment of money on the bond, that the money thus paid is obtained by false pretenses within the meaning of the Bankruptcy Act. In re Dunfee, 219 N. Y. 188, 114 N. E. 52. With reference to the meaning of section 17 (2) of the Bankruptcy Act, 11 USCA § 35 (2), which provided that "liabilities for obtaining property by false pretenses or false representations" are not released by the discharge in bankruptcy, the Court of Appeals of New York in Re Dunfee, supra, in a carefully considered opinion, speaking through Justice Cuddeback, said: "Obtaining the bond by false representations and paying the obligee the amount of the loss should be regarded as all one transaction, which amounted to obtaining money by false representations within the Bankrupt Law. The Bankrupt Law does not require that the property shall be obtained by the bankrupt at the instant of making the false representations, nor that it shall pass directly to the bankrupt. In criminal cases the rule relating to the crime of obtaining property by false representations is the same. Commonwealth v. Harkins, 128 Mass. 79, 85; 9 Halsbury's Laws of England, 698. The parties in the case under consideration intended at the time the false representations were made that the bonding company should assume a contract of suretyship in Dunfee's behalf, and they must have had in contemplation all the results that naturally follow from such a contract. So when the surety company paid the loss to the obligee in fulfillment of its obligation, the law implied that the payment was at the request of Dunfee, and this implication arose from the contract of suretyship itself. As was said in Garr v. Martin, 20 N. Y. 306, 309: 'Where one person advances money for another, in payment of the debt of the latter, it is deemed at the instant of its payment, to be the money of the party for whose benefit the payment is made; so that in the eye of the

law the debt is satisfied, not by the money of a third party, but by that of the debtor himself.'".

This decision of the New York Court is not cited by the parties nor is it argued that the section of the Bankruptcy Act applies to money thus paid, as distinguished from the bond itself. A similar view is taken by the Court of Civil Appeals in Gaddy v. Witt, 142 S. W. 926. It is true as stated in the opinion of the Court of Appeals of New York that "the Bankrupt Law does not require that the property shall be obtained by the bankrupt at the instant of making the false representations, nor that it shall pass directly to the bankrupt," but where there are intervening causes between the representations and the payment, not necessarily contemplated at the time of the representations, such as unanticipated difficulties in the execution of the contract covered by the surety bond, it is doubted whether the money paid on account of such losses is so immediately or proximately the result of the false pretenses as to constitute the prohibited offense. We have been unable to find any decision, civil or criminal, other than those cited, that has gone so far as to hold that money paid on a bond was obtained by fraud, if the bond was so procured. In the case cited by the Court of Appeals of New York, Commonwealth v. Harkins, 128 Mass. 79, 85, supra, it was held by a divided court that where a judgment for damages against a city was obtained by fraudulent representations as to the fact of injury, that obtaining of the payment to satisfy the judgment was not the obtaining of property by false pretenses, although of course the direct object of the false representations was to obtain the money. In the case at bar it must be presumed in favor of innocence and good sense that the contractor did not plan or expect to lose money on the job he had undertaken.

We conclude that the money paid by the surety company was not obtained by the false pretenses as to the bankrupt's financial standing which induced the execution of the bond within the meaning of the Bankruptcy Act.

The Circuit Court of Appeals for the Fourth Circuit approached from a different angle the problem of a surety bond obtained by the fraud of the bankrupt in Royal Indemnity Co. v. Cooper, 26 F.(2d) 585, 587. In that case the surety bond was obtained by the bankrupt, W. B. Cooper, to secure deposits of the state of North Carolina in the Commercial National Bank of Wilmington, N. C., of which the bankrupt was a director. The bond was secured by the bankrupt's false statements of his financial condition at the time the bond was obtained. The bankrupt failed and $25,000 was recovered on the bond. The court stated as follows: "We cannot agree that the reasoning in the two cases [In re Tanner (D. C.) 192 F. 572, and In re Ford (D. C.) 14 F.(2d) 848] relied upon by appellee is controlling here. The bankrupt had given his personal bond to secure the deposit of state funds in the bank, and had deposited collateral for the same purpose, and in securing the bond from the appellant, if he did not obtain money or property on credit, he did at least obtain an extension of credit for the bank. If he was sufficiently interested in the bank to bring him within the rule of the Levy Case [Levy v. Industrial Finance Corp., 276 U. S. 281, 48 S. Ct. 298, 72 L. Ed. 572], then the effect was the same as if he had obtained the extension of credit for himself." While the opinion is pointed and brief, it is clear that the case was decided on the theory that the bank owed the state money which it could only retain by giving a bond. This clearly involved an extension of credit to the bank by the state, for, in the absence of such a bond, the state would have withdrawn its deposits. An "extension of credit" is defined in Corpus Juris as follows: "In commercial law an indulgence by giving time to pay a debt, or perform an obligation; the allowance on the part of the creditor to a debtor of further time to pay a debt; the granting of further time in which to do something which has been set down for a particular day; a postponement by agreement of the parties of the time set for acting." 25 C. J. 227.

We conclude that the opinion of the Circuit Court of Appeals for the Fourth Circuit is not in conflict with our view that the procurement of a surety bond by false pretenses is not per se an obtaining of property by false pretenses; indeed, that court distinguished the facts of the case presented to it in Royal Indemnity Co. v. Cooper, from the facts presented to Judges Rudkin and Neterer in the two cases which we have cited (In re Tanner, supra, In re Ford, supra) and propose to follow.

Order affirmed.